**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
|     Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| PNM RESOURCES, INC. PATRICIA K. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| COLLAWN, VICKY A. BAILY, NORMAN | : **SECURITIES EXCHANGE ACT OF** |
| P. BECKER, E. RENAE CONLEY, ALAN J. | : **1934** |
| FOHRER, SIDNEY M. GUTIERREZ, | : |
| JAMES A. HUGHES, MAUREEN T. | : **JURY TRIAL DEMANDED** |
| MULLARKEY, DONALD K. SCHWANZ, | : |
| and BRUCE W. WILKINSON, | : |
| | : |
|     Defendants. | |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against PNM Resources, Inc. ("PNM Resources or the "Company") and the members PNM Resources board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of PNM Resources by AVANGRID, Inc. ("AVANGRID") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on December 18, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby NM Green Holdings, Inc. ("Merger Sub"), a wholly owned subsidiary of AVANGRID, will merge with and into PNM Resources with PNM Resources surviving the merger and becoming a wholly-owned subsidiary of AVANGRID (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each PNM Resources common share issued and outstanding will be converted into the right to receive $50.30 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked PNM Resources stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Evercore Group L.L.C. ("Evercore") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to PNM Resources stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because AVANGRID, the buyer of the Company, is incorporated in this District and a significant portion of the sales process occurred in this district.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of PNM Resources common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Patricia K. Collawn has served as a member of the Board since March 2010, Chairman of the Board since 2012, and President and Chief Executive Officer since 2010.

11. Individual Defendant Vicky A. Bailey has served as a member of the Board since January 2019.

12. Individual Defendant Norman P Becker has served as a member of the Board since May 2016.

13. Individual Defendant E. Renae Conley has served as a member of the Board since May 2014.

14. Individual Defendant Alan J. Fohrer has served as a member of the Board since March 2012.

15. Individual Defendant Sidney M. Gutierrez has served as a member of the Board since May 2015.

16. Individual Defendant James A. Hughes has served as a member of the Board since January 2019.

17. Individual Defendant Maureen T. Mullarkey has served as a member of the Board since May 2014.

18. Individual Defendant Donald K. Schwanz has served as a member of the Board since July 2008.

19. Individual Defendant Bruce W. Wilkinson has served as a member of the Board since May 2010.

20. Defendant PNM Resources is incorporated in New Mexico and maintains its principal offices at 414 Silver Ave. SW, Albuquerque, New Mexico. The Company's common stock trades on the New York Stock Exchange under the symbol "PNMR."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.      **The Proposed Transaction**

23.     PNM Resources, through its subsidiaries, engages in the energy and energy-related businesses in the United States. It operates through Public Service Company of New Mexico (PNM) and Texas-New Mexico Power Company (TNMP) segments. The PNM segment is primarily involved in the generation, transmission, and distribution of electricity. It generates electricity using coal, natural gas and oil, nuclear fuel, solar, wind, and geothermal energy sources. As of December 31, 2018, this segment had owned or leased facilities with a total net generation capacity of 2,102 megawatts; and owned 3,206 miles of electric transmission lines, 6,067 miles of distribution overhead lines, 5,885 miles of underground distribution lines, and 255 substations. It also owns and leases office and other equipment, office space, vehicles, and real estate. The TNMP segment provides regulated transmission and distribution services. As of December 31, 2018, this segment owned 997 miles of overhead electric transmission lines, 7,151 miles of overhead distribution lines, 1,260 miles of underground distribution lines, and 122 substations. It also owns and leases vehicles, service facilities, and office locations throughout its service territory. The Company serves approximately 782,000 residential, commercial, and industrial customers, as well as end-users of electricity in New Mexico and Texas. PNM Resources was founded in 1917 and is headquartered in Albuquerque, New Mexico.

24.     On October 21, 2020, PNM Resources and AVANGRID jointly announced that they had entered into a proposed transaction:

> (ALBUQUERQUE, N.M.) – PNM Resources (NYSE: PNM) today announced with AVANGRID (NYSE: AGR) that they have entered into a definitive agreement under which AVANGRID will acquire all the outstanding shares of PNM Resources. The agreement, which has been unanimously approved by both companies' Boards of Directors, creates a leading U.S. regulated utility and renewable energy platform. Under the terms of the agreement, PNM Resources shareholders will receive $50.30 in cash for each share of PNM Resources common

stock held at closing, representing an equity value of approximately $4.3 billion. The proposed transaction implies a 19.3% premium to PNM Resources 30-day volume weighted average price (VWAP) as of 10/20/20. "We are excited to be part of this transaction that provides so many benefits to our customers, communities, employees and shareholders," said Pat Vincent-Collawn, Chairman, President and CEO of PNM Resources. "Our combined companies provide greater opportunities to invest in the infrastructure and new technologies that will help us navigate our transition to clean energy while maintaining our commitments to our local teams and communities."

COMBINED COMPANY The combination creates a larger, more diversified regulated utility and renewable energy company with electric and gas utilities in complementary geographies. Regulated utility operations expand under the transaction and provide increased operational and regulatory diversification, serving more than 4 million electric and natural gas customers of 10 regulated utilities across New York, Connecticut, Maine, Massachusetts, New Mexico, and Texas. These combined operations are supported by $14 billion of rate base, including more than 104,000 miles of electric transmission and distribution lines. AVANGRID is the third largest wind operator in the U.S. and is a leading sustainable energy company with more than 7.4 gigawatts of installed wind and solar capacity. The strategic combination with PNM Resources also provides a platform for AVANGRID to expand its renewables business in the Southwest beyond its existing 1.9- gigawatt capacity wind projects in New Mexico and Texas and 200 megawatts of wind and solar capacity in Arizona. The scope and diversity of the combined business results in greater ability to invest in energy efficiency and new technologies. The combined company's robust financial profile will provide flexibility to pursue near- and long-term growth opportunities, particularly in electric transmission and renewable energy. Through AVANGRID's parent company, Iberdrola, S.A., the combined company will have access to extensive financial resources to support this growth profile. Ignacio Galán, Iberdrola and Avangrid Chairman: "This transaction is a consequence of the IBERDROLA Group's disciplined strategy followed over more than 20 years. This is a friendly transaction, focused on regulated businesses and renewables in highly rated states with legal and regulatory stability and predictability offering future growth opportunities." Dennis Arriola, Avangrid's CEO who will remain as CEO of the combined Company said: "This merger between Avangrid and PNM Resources is a strategic fit and helps us further our growth in both clean energy distribution and transmission, as well as helping to expand our growing leadership position in renewables. Our two companies also share the same values as we both are passionate about our customers, employees, and the communities we serve. In addition, both AVANGRID and PNM Resources are leaders in environmental, social and governance issues that impact our stakeholders." OTHER INFORMATION The combined company recognizes the value that local management's knowledge and expertise bring to serving the communities in which its businesses operate. PNM Resources operations will continue to be overseen locally and the current headquarters of the utilities in New Mexico and Texas will

remain. Customers of Public Service Company of New Mexico (PNM) and Texas-New Mexico Power Company (TNMP), the wholly-owned regulated utility subsidiaries of PNM Resources, will benefit from the shared knowledge and technology across a global organization. The combined entity will have access to greater resources to continue providing safe and reliable service that supports an accelerated transition to clean energy and provides customer value. Pat Vincent-Collawn will step down as Chairman, President and Chief Executive Officer upon closing of the transaction. Don Tarry, current Chief Financial Officer of PNM Resources, will oversee the continuing operations of PNM and TNMP. Two directors from the current PNM Resources Board will serve as independent directors of AVANGRID. One director from the current PNM Resources Board will also serve on the Board of the Avangrid Networks business. PNM remains committed to exiting coal through the approved abandonment of San Juan Generating Station in 2022 and the continued efforts to exit its 200-megawatt ownership interest in the Four Corners Power Plant earlier than originally planned. PNM sees the potential for additional customer savings by exiting the plant sooner than the expiration of the ownership and coal supply agreements in 2031. An earlier exit from Four Corners also opens the door for the combined company to bring additional renewable resources onto the grid in support of New Mexico's increasing renewable energy standards and 2045 carbon-free mandate.

The transaction is subject to PNM Resources shareholder approval, regulatory approvals from the New Mexico Public Regulation Commission, Public Utility Commission of Texas, Federal Energy Regulatory Commission, Department of Justice (Hart Scott-Rodino Clearance), Nuclear Regulatory Commission, Federal Communications Commission and Committee on Foreign Investment in the United States, and other customary closing conditions. The transaction is expected to close between October and December 2021. ADVISORS Evercore served as exclusive financial advisor and Troutman Pepper served as legal advisor to PNM Resources. BNP Paribas served as exclusive financial advisor and Latham & Watkins served as legal advisor to AVANGRID.

25. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that PNM Resources' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Proxy Statement**

26. On December 18, 2020, PNM Resources filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the

Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning PNM Resources Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by PNM Resources management and relied upon by Evercore in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that PNM Resources management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Operating Income Excluding

Regulatory Disallowances, Ongoing Net Income, Ongoing EPS and If Converted Ongoing EPS, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analysis*

32.     With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the standalone, unlevered, after-tax free cash flows for the Company for the period from October 20, 2020 through December 31, 2024; (ii) the ranges of terminal values for the Company; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 1.50% to 2.00%; (iv) the inputs and assumptions underlying the use of the price to earnings-per-share ("P/E") multiples ranging from 18.00x to 21.00x to the estimate of 2024 recurring net income reflected in the Projections; (v) the inputs and assumptions underlying the use of the enterprise value ("EV") to earnings before interest, tax, depreciation and amortization ("EBITDA") multiples ranging from 11.00x to 13.00x to the estimate of 2024 EBITDA reflected in the Projections; (vi) the inputs and assumptions underlying the discount rate of 5.0% to 6.0% for the various methods of computation; (vii) the net debt of the Company as of September 30, 2020; and (viii) the number of fully diluted outstanding shares of the Company as of September 30, 2020.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Evercore and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

11

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of PNM Resources within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of PNM Resources, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of PNM Resources, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of PNM Resources, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 23, 2020 **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*